My name is Jeffrey Cheshire and I represent Mr. Suarez-Russell. Not having a lot of time, Your Honors, I'd like to move directly to what I think is the heart of my arguments and first start with the suppression issue. The real problem in this case is that the defendant was given two warnings which were inconsistent. Which was first, the Miranda warning? The Miranda warning came first. And he waived his Miranda rights. True. I don't understand how something that happened afterwards can undo something that happened before that was sufficient on its face to waive his rights. The answer to that, Your Honor, is that a Miranda waiver is not good for all time and all place just because you've signed it once. I think the case law is pretty clear that you can revoke your Miranda waiver. In other words, you say, I'd like to talk to you guys. And then maybe they bring up a new issue. Maybe they say, well, what about this murder you committed? You thought you were in for a theft. And you say, well, that's different. I don't want to talk to you guys anymore. Is that what happened here? It's analogous, I believe, Your Honor, because they How is it analogous? It's analogous because the government Where did he say I don't want to talk to you anymore? He wasn't Let me back up. The warnings need to be unequivocal and they need to be clear. Miranda, they were right. And he waived his Miranda rights. Except later they said, well, here's the immigration stuff. And how does that undo the Miranda? Because it made the defendant think that they were talking about immigration issues, civil immigration issues, which have different rights and different responsibilities and different standards in terms of what the government has to do. So by giving him a warning that says nothing about you have the right to an attorney, giving him a warning that says you need to talk to us now, otherwise we're not going to consider your any claim you may have to an immigration benefit, that they're undoing what they've purportedly done at the beginning. So I think you can the response is that you can undermine the Miranda warning by your conduct later in the game, so that after they give him this warning, which may be clear in which he signs, the fact is that they go and they tell him, well, it looks like you really don't have all these rights, at least that's my argument, because they're giving him an immigration warning that doesn't have the same language. And I think that San Juan Cruz is very apt on that point, and it really outlines the danger that a custodial interrogation, a defendant in a custodial interrogation faces when he's not really sure what his rights are, what applies to them, and he's just seen a form that says a whole lot of stuff that doesn't indicate he has a right to an attorney, right to remain silent, and he's going to be used against him in a criminal prosecution. San Juan Cruz says that it doesn't matter what the sequence is, but it does say, does it not, that the other warning, whether it's given first or last, has to be not consistent with Miranda. And what's the basis for your position that this second warning that was given is not consistent with Miranda? Is there something in it that takes out the specific warning in Miranda? That's the heart of it, Your Honor. I believe that what it takes out is, number one, the right to counsel. In other words, there's no mention that you have a right to appointed counsel. It doesn't say you don't have a right to counsel. But Miranda told him he already did. The disparity, I think, though, leads to confusion in the mind of the defendant. Also, I think that the coercive language is perhaps in the positive, what is in there. In other words, it says this may be your only opportunity to present information to this immigration official. It will be used in this administrative or other administrative proceedings. And an administrative proceeding is really a determination by, you know, the Justice Department as to or the executive branch as to, you know, whether you get immigration benefits. It says nothing about a criminal prosecution. And this particular officer knew that this was going to be a criminal prosecution. This was not an inquiry as to, well, maybe this individual has some kind of basis to come to the United States. No, he was brought to her because she was going to interrogate him and later use this information in a criminal prosecution. So I think that the Court is right that the order is not just positive. And my argument is that the order is even worse in this case than San Juan Cruz, because in San Juan Cruz they gave the immigration warning and then they gave the Miranda warning, so it was more recent in the defendant's mind. In this case, it was the reverse, so that the more recent warning in the defendant's mind was the inconsistent immigration warning. Did you want to address the enhancement, which does seem to be a problematic issue? Very much so, Your Honor. I think that, number one, I believe that the course of the briefs, the letter briefs, went away from the first argument that probation put forward for the enhancements, which was the firearms offense. I think that Destructive device. Exactly. I read it that that's not on the table anymore, although we'll certainly have So I agree, and I'd like to focus my efforts on what I think emerged as the more interesting question, which was the burglary of the, quote, house. And I think that there's two very important things to note. Well, as a general matter, I think that my argument is that the record is insufficient to support factually a determination under the modified Taylor analysis or the, you know, if it's not in the four corners of the statute, then you need to range a little bit into the judicially noticeable record. And I think that that record is insufficient in this case. But even if we look at what is there, I think that it clearly points to this is outside of the 16-level enhancement for a crime of violence. And that's because, number one, it's the charge to which he pled no love to and was eventually convicted said uninhabited. And California law clearly discusses that uninhabited, well, inhabited under Penal Code 459 says currently used for dwelling purposes whether occupied or not. So it would cover the vacation house. It would cover the owners aren't there. They've only, you know, they've signed the lease, but they haven't moved in yet. And that would be inhabited. It would be inhabited. In this case, though, the charge was uninhabited, which means it's not being used for dwelling purposes. And the 16-level enhancement requires that it be a dwelling. Secondly, the complaint says a house. Well, you might think a house is a house, but not apparently under California state law. And that's what the supplemental authority that I submitted just now discusses. So under California law, apparently the definition of house is very broad and would include a structure with four walls and a roof that shelters property or people or animals. And the people v. Miller, that's that side. And people v. Coffey, that's a 1921 case. So this goes back quite a long ways in terms of the usage in California pleading. Well, let me just see if I got this straight. In the end, the minute order says he's convicted of second degree, correct? True. And second degree means not an inhabited dwelling. That's correct. And that's at the except for the record 162. And then under the abstracted judgment, you can't tell anything. That's kind of neutral, I guess. True. And there was nothing submitted. So even if you're wrong, I mean, isn't it possible that an uninhabited house could equate to the California version of an unoccupied house? But we don't know that. I don't think so, Your Honor. Wouldn't, in the end, the combination of these three things, meaning the second degree burglary, which appears not to comply with the dwelling issue, I mean, that seems to be what he's convicted of in the minute order. That plus the abstracted judgment, wouldn't that be enough to tip over the whole use of that conviction? Even if you were wrong about uninhabited, uninhibited, and inhabited, and all the other words that are in the first part of the statute? I agree. All those taken together, Your Honor, I think are extremely persuasive in terms of this not being an occupied or unoccupied dwelling, not a dwelling. In other words, the house language encompasses a shed, for example, a storage shed. And on excerpt of the record, page 116, it says the court finds that this is in the second degree. The second degree under, I think it's 460, Penal Code 460, says everything else is second degree, and the first degree is like an inhabited structure or a dwelling. So if it's first degree, it's a dwelling. And then there's case law in California that talks about that's the more punishment because there's more risk of danger, more risk of the all the crime of violence type language, and that's why we're out of that. So I think clearly the 16-level enhancement should not apply. I'd like to reserve a little bit for rebuttal. Is there any record support for the proposition that your client was confused by the administrative warning with respect to the Miranda warning? Your Honor, that's what the court, the district court relied on, that there was no evidence that he was confused. I think that that's not our burden. I think the government has to clear it up. When they give up two inconsistent warnings, it's their job to say, no, look, here's what you're doing. There was no, he didn't testify when I got that administrative warning. I thought that other stuff was gone. No, the only thing we have that's close is that in the precedent's investigation report, it disclosed that he was of low intelligence and had learning disabilities and trouble in school. But that's separate. Thank you, counsel. Thank you. May it please the Court, for the United States, Justin Myhock. The facts are essentially this, that the defendant was detained or arrested, read his Miranda rights, which he acknowledged both orally and writing. He waived those rights voluntarily, and then he was advised of the immigration rights or the rights pursuant to the immigration proceeding, and from there the transcript was prepared. After that transcript was prepared, it was gone over page for page with the defendant. He initialed each page at the bottom that it was accurate, and he signed it at the end acknowledging that it was accurate and true. Under these facts, the district court did not clearly err in finding that the defendant had knowingly and voluntarily waived his Miranda rights or those rights. With regard to those findings, it was clearly stated in the record on page 20 and 21 and further in the district court's final holding at page 43 that the defendant knowingly, voluntarily, and intelligently waived those rights. Never once did he ask questions pertaining to those rights, express any uncertainty with regard to them, and therefore they were voluntarily waived. Given the totality of the circumstances, in addition to the defendant's character and background, here we have someone who has three prior juvenile convictions, seven prior adult convictions, four of those were misdemeanors, three of those being felonies. He'd given statements on two prior occasions. He was not unequated with the criminal justice system. He knew what his rights were. He voluntarily waived those. And turning to the arguments, I guess defense counsel is sort of advocating a double procedure in that you're advised of your Miranda rights, you make a statement, then you get your immigration warnings, and then you make a statement. That procedure would be redundant, obviously, because the rights that were given here, actually they complement each other, and they provide additional safeguards. But in addition to that, it's not practical in the District of Arizona, where we literally have hundreds of thousands of immigration-related arrests a year. It would be completely unnecessary. The three areas that are complained of, the first deals with the defendant and his right to counsel. And as this Court has already indicated, he is advised of his right to have an attorney present during the Miranda warnings. That's not undone. There's nothing inherently contradictory during the administrative immigration warnings that he receives. And that's how this case is distinguished from San Juan Cruz. In San Juan Cruz, the Court specifically talked about the immigration proceeding warning, which said, you have a right to an attorney, but not at the government's expense. This right contains none of that. And when we look at the transcript that the defendant initialed at each page and signed at the end, never once does he indicate, what about my right to an attorney? He never asked a question with regard to that. I think it's clear that this does not do the administrative warning that came after the Miranda warning, does nothing to undo his understanding of his right to have an attorney present. The second area dealt with where these statements could be used against the defendant. And, again, there's nothing inconsistent. And the defendant, again, expresses no confusion with regard to those rights. The administrative warning here says, this can be used against you here or in any administrative proceeding. It doesn't say, this can only be used against you in an administrative proceeding, and no one is ever going to use it against you in a criminal proceeding. There is nothing inherently contradictory in that. And, again, when we review the transcript of the defendant's statement, he never states, where can this be used? I have confusion about that. The last area deals with the defendant's right to remain silent. The immigration proceeding form does indicate that this might be your only chance to speak with us. What about the other issues in the case? With regard to the enhancements, Your Honor, the 16-level enhancement is appropriate in this case, and there's no plain error in applying it. We can set aside the destructive device conviction for now. We don't need to reach it because, based on the burglary conviction alone, that justifies a 16-level enhancement. Are you abandoning the destructive device? No, Your Honor. If the court does reach the destructive device conviction, we'd ask for a remand so we could engage in the Taylor modified categorical approach. But with regard to the burglary conviction, here, Your Honor, it's clear that a burglary of a dwelling is a crime of violence, as long as it involves a building or a structure, and that's what Taylor has told us. Judicially noticeable facts in this case are the information and those documents that follow. And the information specifically says that it is that the defendant entered an uninhabited house, specifically stated it was a house. A house is a dwelling. With regard to that, and if giving a house its common meaning, it's a building where people live. And just because when the defendant entered that house, he found he was all alone, it doesn't make that house not a home. And essentially, Your Honor, our point is that regardless of the ---- How does that comport then with what he got convicted of on the court docket, which was second degree, which meant it wasn't a house dwelling, whether inhabited or whether occupied or not? Yes, Your Honor. And specifically with regard to that, that's why I filed the 20HA letter earlier in the week. That was never raised below. It was never contested whether this was a felony or misdemeanor. The first time this is even hinted at, and I stress the word hinted at, is in defendant's reply brief. When he says, quote, it may have been a misdemeanor. That's the first time we hear any mention of that. The defendant was on notice that this was a felony, not only from, at 110 of the record, the information where it states a felony, not only from the judgment of that record, which is contained. We're talking now about trying to interpret the documents on a modified approach in the burglary conviction. By having it be a second degree, it's not a dwelling, whether or not the dwelling was occupied or not occupied, which would be first degree under the California statute. So then you're left with a conviction for, quote, other things, or I think something along that the statute says, but the other things are not the dwelling. So how do you square that with the charging document, and are you left at kind of an impasse? No, not at all, Your Honor. And if the court finds that that argument was not waived because it was not raised at all below, and we get to whether or not it was a misdemeanor or a felony, I think that the record, the facts that were introduced and the records that have been introduced, that the court did not plainly err in finding that it was a felony, not only the information where it states a felony, but also the abstract, which I know you've alluded to. And in that abstract, it does state burglary in the second degree, but it goes on to state that the sentence imposed is eight months, which is one-third of the mid-level of the guideline of the range, which would be 24 months. Mid-level of 24 months, meaning that the defendant's exposure for that conviction then was 48 months, four years. You don't go to jail for four years on a misdemeanor. And not only was it indicated in that abstract that it was one-third of the mid-level range, which would be the eight months, but also it's indicated in the information to which the defendant pled guilty. And that was also indicated in the presentence report where it indicated where it was specifically delineated as a felony. I think we're missing each other on what I'm talking about. I'm trying to figure out whether, under the modified Taylor approach, this actually is a burglary of a dwelling. And we don't – we know it's not on its face because of this odd California statute, but are you relying solely on the charging document as your basis? Well, Your Honor, with regard to whether or not – the first time I've heard defense counsel raise anything with regard to the definition of a house was when I was handed these – a piece of paper this morning that had 1915 and 1921 case. And to me, that really is not dispositive on the issue. I mean, the fact remains that the information delineated it as a house. The California dichotomy, from what my understanding of it is, is that it's uninhabited. It could be a dwelling. It's still a dwelling. And people might have left stuff there. There might be furniture there. But no one has a present intention of dwelling there, sleeping there at night. That doesn't make it – No, but that's – what was he convicted of according to the court order? He was convicted of second degree. Forget the felony, whether it was a felony. That's not the issue. The issue is what does that document mean, which says he wasn't convicted of first degree, which, as I recall, said the dwelling, whether or not somebody occupied it. That's first degree. But he was convicted of this any other kind of burglary. Well, how does any other kind of burglary square to let us know that under the Federal rules it's a burglary of a dwelling? And at this point, Your Honor, all we have to rely on that is the information, the charging instruments which the defendant pled. And we also have the abstracted judgment to indicate that based on the sentence that the court pronounced, that they were considering it as a felony because they stated specifically in there that the defendant's exposure was 48 months. But beyond that, we don't have a transcript of the change of plea allocution. And, again, if the court does get to that exact issue, we would ask for a remand to engage in the modified categorical approach with regard to the burglary conviction. Counsel, let me just pursue that last issue. The penal code says that inhabited means currently being used for dwelling purposes, whether occupied or not. So it makes a distinction between whether somebody happens to be in the place or whether the place itself is currently being used for dwelling purposes. And he was charged with burglary of an uninhabited house, which would sound as though it takes it out of that category. Does it not? No, Your Honor. Regardless of the fact whether or not somebody is currently sleeping there and spending the night there, it doesn't mean that it's not. No, no, no. I think you've missed. Let me try again. It defines inhabited in terms of whether the thing is currently being used for dwelling purposes. Somebody may be out for the evening, for example, because they're not occupying it. So it makes a distinction between a use for dwelling purposes and whether somebody happens to be occupying it at the time of the invasion. And what he's charged with is an uninhabited place, right? That's correct. And doesn't that then put it on the other side of that line? Regardless of whether or not someone is occupying that house, that dwelling, it still doesn't change the nature and character of it. It still doesn't change the fact that it's a house, that it's a building or a structure, and that's all you need to show under guilt. So you're basically giving us a Gertrude Stein that is a rose is a rose is a rose. You say a house is dwelling automatically, and that's the end of the story? Well, not automatically, Your Honor. But the information here is that it was specifically a house, and that a house is a building or a structure, and that's all that is required under Taylor. Thank you. Counsel. Very briefly, Your Honor. I think that counsel addressing in terms of the arguments weren't raised below, I think these are all tied together so tightly that they really all relate to each other, and so I think they were naturally objected to at the district court as well. So you didn't make even a hint of this until recently? No, I'm saying, Your Honor, that it's all bound together, and it was very clear we were talking about this is not a dwelling, and so they're all tied together, and I think that they were well raised at the district court level and at the opening brief and throughout. I think there are a trilogy of facts that show that this was not a type of offense that should get the 16-level enhancement. Number one, the second degree takes it out of the dwelling. And number two, uninhabited in the charging document, which is basically all we have, and I think that's insufficient, but even if we only use that, uninhabited has a specific legal meaning. Inhabited is defined in the very statute he's convicted of as currently being used for a dwelling, whether occupied or not. So if it's a dwelling, it doesn't matter if they're home, they're on vacation, it's a dwelling. What are you asking us to do on the sentencing issues? Remand for resentencing? I'm saying remand for resentencing consistent with this not being a level 16 enhancement. So bind the district court's hands then and not permit a further look into this under a modified categorical approach. I agree, Your Honor, because I believe we fully litigated all these issues and we should get it decided in terms of the proper offense category. What about the other issue that counsel has said is not withdrawn, taken off the table? I'm sorry, Your Honor, what was that? The other issue that counsel had said in response to a question has not been taken off the table, the other conviction. The destructive device. The destructive device. I think that this, again, modified Taylor approach. In my letter brief, I talk about all the things that are in the California statute that are not encompassed in the Federal statute. So firearms offense, firearms offense under the application notes also includes an explosive device. Then you follow through all the rules on explosive device and you find, for example, that a firecracker is legal under Federal law. However, the fire marshal and other authorities with the ability to do these things has made firecrackers illegal in California. So you can be convicted of that statute and not be convicted or not be falling under the firearms offense. So you can't use a categorical approach. And, again, they have no proof of what it was. Would you remind us whether the district court walked through the modified approach? The district court did not walk through it per se. He basically said that I find that there's enough to support in the record and left it as that. I don't think he went into great detail. But he was doing it based on a modified rather than a categorical approach under both of those, or do we not know? What I remember, Your Honor, and I was at counsel at the trial level, was that we made the objections, probation came back with it, and the judge basically said, well, I agree, it's there. I don't think we went into an in-depth analysis. Thank you. Thank you. Thank you, Counsel. The case just argued is ordered submitted. We'll call covert versus Hubbard.
judges: Trott, McKeown, Shadur